**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARK KERIK                          )
　　　　　Plaintiff,                    )
　　　　　　　　　　　　　　　　　　　　　)
　　v.                              )          Civil Action No. 08-00059
　　　　　　　　　　　　　　　　　　　　　)          Judge Nora Barry Fischer
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
　　　　　Defendant.                    )

**MEMORANDUM OPINION**

## I.　　INTRODUCTION

Plaintiff Mark Kerik ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level.

## II.　　PROCEDURAL HISTORY

Plaintiff filed his application for Social Security Disability on December 28, 2005, alleging disability as of November 20, 2005. (R. at 98). On March 27, 2007, a hearing was held before an Administrative Law Judge ("ALJ") in Morgantown, West Virginia. (R. at 266). Plaintiff, who appeared with counsel, testified at the hearing. (R. at 266). James Ganoe, a Vocational Expert ("VE"), also testified. *Id.* On April 11, 2007, the ALJ issued a decision in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7). The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision

the final decision of the Commissioner in this case. (R. at 4-7). Plaintiff now seeks review of that decision by this Court.

## III.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering

[her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. *Baerga v. Richardson,* 500 F.2d 309, 312-13 (3d. Cir 1974). He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rule making authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education,

and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

If it is shown that the claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *Kangas* v. *Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## IV.    FACTS

### A.    General Background

Plaintiff was born on July 20, 1957. (R. at 44). At the time of his hearing before the ALJ, Plaintiff was 6 months shy of his fiftieth birthday. (R. at 293). For decisional purposes, Plaintiff was considered a "younger individual" under 20 C.F.R. §§ 404.1563, 416.963. (R. at 23). Plaintiff has a twelfth-grade education. (R. at 23). Plaintiff is married and has three children. (R. at 50). Plaintiff smokes one pack of cigarettes per day and drinks socially. (R. at 174, 278). Plaintiff's prior work history includes stints as a van driver, supply man/motorman, foreman, and laborer/coal miner. (R. at 80). He last worked as a laborer/coal miner before being laid off on November 20, 2005. (R. at 98). Plaintiff claims November 20, 2005 as the onset date of the disability which renders him unable to work. (R. at 98). Plaintiff received unemployment benefits for a period ending November 30, 2006. (R. at 74).

B.    **Medical Background**

Plaintiff applied for DIB on December 28, 2005, after being laid off from his employment as a coal miner/laborer on November 20, 2005. (R. at 14, 48). Plaintiff contends he was laid off due to vascular problems which prevented him from keeping up with the work pace. (R. at 19). Plaintiff testified that his vascular problems began on November 20, 2005. (R. at 49). He alleges he became unable to work due to his disability on the same date. (R. at 49). Plaintiff sleeps on the first floor, claims that on a usual day, he will have leg, foot, buttocks, and back pain, and that his wife has to help him in the shower. (R. at 90).

Plaintiff was diagnosed with peripheral vascular occlusive disease and underwent a successful distal femoral to tibial bypass grafting on December 12, 2005.[1] (R. at 232). Gene Manzetti, the operating surgeon, noted on February 20, 2006 that Plaintiff was showing a "marked improvement" and there was no need for follow-up for six months. (R. at 231). At Plaintiff's follow-up appointment in August of 2006, Dr. Manzetti noted that Plaintiff's vital signs were stable, there were audible pulses in both feet, and there was no evidence of ischemic ulceration[2]. (R. at 230).

On February 17, 2005, Plaintiff began treatment with Dr. Arnold S. Broudy for a right middle

---

[1]

"A femoral-tibial bypass is performed by implanting a small tube to carry blood flow from the femoral artery in the groin directly to the one of the tibial arteries, bypassing the blocked sections of the leg arteries." Penn State Heart and Vascular Institute, Femoral-Tibial Bypass, http://www.hmc.psu.edu/heartandvascular/programs/vascular/femoraltibial.htm

[2]

An ulcer resulting from ischemia. Ischemia is a "local loss of blood supply due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood vessel." *See Stedman's Medical Dictionary*, p. 1001 (28th ed. 2006).

finger injury. (R. at 160). The finger was smashed in November 2004 as a result of a work-related incident. *Id*. Plaintiff never fully lost the use of said digit. (R. at 147). Dr. Broudy declared the wound completely healed on June 2, 2005. (R. at 150). On July 14, 2005, Dr. Broudy examined Plaintiff and found that Plaintiff's finger wound was well healed, and that Plaintiff had reached a plateau with regard to his recovery. (R. at 148). Plaintiff returned to work shortly thereafter. *Id*.

Plaintiff began seeing Dr. John Martin as his primary care physician on January 23, 2006. (R. at 204). At that time, Dr. Martin found Plaintiff's lungs clear, cardiac rhythm regular, and generally, no acute distress. *Id*. Dr. Martin also found Plaintiff to have hypertension and hyperlipidemia.[3] *Id*. At a March 30, 2006 follow-up with Dr. Martin, Plaintiff had some symptoms of vascular problems, though the hypertension and hyperlipidemia were under control. (R. at 201). Dr. Martin found Plaintiff's left leg vascularly insufficient on September 22, 2006. (R. at 199). At this time, Plaintiff complained of pain in his elbow which Dr. Martin noted could be osteoarthritis pain. *Id*. Subsequent tests on the elbow revealed no abnormalities. (R. at 22). Dr. Martin noted the issues of hypertension, hyperlipidemia, and vascular disease on November 20, 2006. (R. at 196). Additionally, Drs. Manzetti and Martin repeatedly warned Plaintiff to quit smoking. (R. at 199, 230).

In June 2006, Plaintiff began treating with Dr. R.K. Mehta, a psychiatrist, for depression resulting from his surgery. (R. at 248). Dr. Mehta diagnosed Plaintiff with a single moderate case of major depression and prescribed medications. *Id*. On July 27, 2006, Dr. Mehta examined Plaintiff and

---

[3] A condition characterized by elevated levels of lipids in the blood plasma. *See Stedman's Medical Dictionary,* p.922 (28th ed. 2006).

reviewed his chart. (R. at 249). Dr. Mehta noted that Plaintiff was "not too bad" and that he had

gangrene in his left foot which was expected to be gone within one year of his surgery (i.e. December,

2006). *Id.* Dr. Mehta saw Plaintiff on August 16, 2006, noting that while the gangrene was improving,

Plaintiff now complained of a backache. (R. at 250). Plaintiff was anxious, preoccupied, and having

hallucinations according to his initial Mental Status Exam. *Id.* However, Dr. Mehta found that

Plaintiff's memory was intact, he had fair concentration, was organized and alert, and appeared to be

in good hygiene. *Id.* There were no changes in Plaintiff's subsequent Mental Status Exams conducted

on October 11, 2006, December 6, 2006, and March 21, 2007. (R. at 252, 254, 256).

### C.    Plaintiff's Hearing

Plaintiff's application for disability benefits was denied on May 24, 2006 and a hearing

request was completed on June 5, 2006. (R. at 21).

A hearing was scheduled for March 27, 2007. (R. at 44). At the hearing, the ALJ found the

following: that Plaintiff had met the period of disability required by § 216(I) of the Social Security

Act; Plaintiff had not engaged in any substantial gainful activity during the period at issue; Plaintiff

has had severe medically determinable impairments for at least twelve consecutive months including

popliteal-tibeal and foot arch occlusive vascular disease, post December 2005 left femoral-tibial

bypass grafting, history of pre-gangrenous changes to the first, second, and third left toes and dry

gangrenous changes to the left great toe, mild residual effects of a post November 2004 right middle

finger crush injury and subsequent infection, history of nicotine addiction/abuse, history of

hypertension which has been controlled, and a single moderate episode of a  major depressive

disorder. (R. at 18)

At the March 27, 2007 hearing, the VE testified. (R. at 292). The ALJ proceeded to describe

a hypothetical person and ask what work that person could perform. (R. at 294, 295). The ALJ described someone of Plaintiff's age and educational background who could perform light work with further limitations that he could lift no more than twenty pounds; would need to alternate between sitting and standing at ten minutes every hour; could not climb any ladders, ropes, or scaffolds; could not crawl or kneel; and could not be exposed to hazards such as moving plant machinery or unprotected heights. (R. at 294). The VE testified that this person could not return to the work that Plaintiff performed in the past. *Id.* However, the VE identified that the hypothetical person could do the job of a mail clerk or garment sorter under the light exertional level,[4] though he reduced the number of those jobs available in the national economy in half due to the hypothetical person's need to alternate between sitting and standing. (R. at 295).

At the sedentary level,[5] the VE testified that the hypothetical person could perform the work of a garment sorter and a bench worker. (R. at 296). According to the VE, these jobs exist in significant numbers in the national economy. *Id.* Finally, the ALJ asked the VE if, assuming the truth of all facets of Plaintiff's testimony, including no ability to do any exertional work and no ability to

---

[4]

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 416.967(b).

[5]

"Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. § 416.967(a).

concentrate or maintain attention to conduct any unskilled type of job, there would be any jobs that he could identify for the hypothetical person to engage in. (R. at 296). The VE testified there were no identifiable jobs under that scenario. *Id.*

The ALJ concluded that Plaintiff's medically determinable impairments do not meet the requirements for receipt of DIB and that Plaintiff retained the ability to engage in some unskilled work activity which requires no more than light exertion and affords the ability to alternate between sitting and standing. (R. at 18). The ALJ found insufficient medical evidence to show Plaintiff was precluded from the performance of any limited range work activity for any consecutive 12-month period. (R. at 23). The ALJ also concluded that Plaintiff's complaints of pain and depression appear calculated toward gaining a compensable disability claim, and therefore Plaintiff is not fully credible or reliable. (R. at 20, 23).

At the hearing before the ALJ, Plaintiff's counsel requested that the record be held open for a week because there may have been a form from Dr. Mehta which he did not receive. (R. at 298). The ALJ agreed, representing to Plaintiff's counsel that he would have at least a week to add any evidence to the record. (R. at 299). The ALJ said that if he did not receive anything, he would then issue his written decision. (R. at 299).

Plaintiff's reply brief to Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant"), contains an attachment of a fax cover sheet dated March 29, 2007 to the attention of ALJ George Mills at the SSA and the form completed by Dr. Mehta, dated January 31, 2007 diagnosing Plaintiff as permanently disabled (Docket No.13 at 4-5, R. at 265). Further, Plaintiff's counsel, Gregory T. Kunkle testified in an affidavit that he sent the completed form of Dr. Mehta to the ALJ via facsimile and by mail, both dated March 29, 2007–two days after the hearing. (Docket

No.13, at 2, 3). The ALJ never mentions the form in his decision promulgated on April 11, 2007. (R. at 12-23). The Appeals Council subsequently made Dr. Mehta's form part of the record on November 17, 2007, though it denied Plaintiff's request for review of the ALJ's decision. (R. at 7, 10).

## V.    DISCUSSION

Employing the five-step sequential evaluation for analyzing disability claims as set forth in *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003), the ALJ determined at step one that Plaintiff had not engaged in any substantially gainful activity since his alleged disability onset date. (R. at 17). At step two, the ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c): politieal-tibial and foot arch occlusive vascular disease; history of pre-gangrenous changes to the first, second, and third left toes and dry gangrenous changes to the left great toe; right middle finger injury and subsequent infection; history of nicotine addiction; hypertension; and a single, moderate episode of a major depressive disorder. (R. at 17). At step three, the ALJ concluded that Plaintiff's impairments, although "severe", were insufficient to meet or medically equal the severity for any impairment enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17). More specifically with regard to mental status, the ALJ found that Plaintiff did not exhibit any debilitating combination of psychological symptoms sufficient to meet or equal the 12.04C criteria or the severity requirements of any other 12.00 *Mental Disorders* series listing for any consecutive twelve-month period. (R. at 18). Moving to step four, the ALJ made the following residual functional capacity ("RFC") assessment:[6]

> [t]he claimant has had the residual functional capacity to perform a

---

[6]    A claimant's residual function capacity is a determination of what the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2), 416.945(a)(1).

> range of unskilled work activity that: requires no more than a "light"
> level of physical exertion; affords hourly the option to alternate
> between sitting and standing for a period of at least ten minutes;
> requires no crawling or kneeling, or climbing of ladders, ropes or
> scaffolds; entails no exposure to hazards (e.g. dangerous moving
> machinery, unprotected heights); and involves only simple, one-to-
> two-step instructions, processes and tasks.

(R. at 18). Given this assessment, it was determined that Plaintiff could not return to past relevant work as it was a "highly physical job" and he was limited to no more than simple, unskilled work activity. (R. at 19, 22). After considering Plaintiff's age, education, work experience, and residual functional capacity, it was determined that a significant number of light exertional and sedentary jobs exist in the national economy that Plaintiff could perform. (R. at 24). Consequently, at step five, and after considering the above findings, Plaintiff was found not "disabled" under §§ 216(I) and 223(d) of the Social Security Act. (R. at 25).

The ALJ also found that Plaintiff's application for disability benefits "[w]ould appear clearly motivated more by immediate financial concerns than any actual...impairment-related inability to perform any and all forms of work activity for 12 consecutive months." (R. at 19). While admitting Plaintiff has impairments, the ALJ found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be not entirely credible. (R. at 19).

Plaintiff raises the following arguments in support of his motion for summary judgment: (1) the ALJ erred as a matter of law in failing to accord great weight to the Plaintiff's complaints of pain; (2) the ALJ's credibility assessments are not supported by substantial evidence; (3) the ALJ erred in failing to consider and accord controlling weight to the opinion of Dr. Mehta; and (4) the ALJ failed to accurately portray Plaintiff's limitations in the question posed to the VE (Docket No. 8). Plaintiff requests that the decision of the ALJ be remanded for further consideration or reversed. (Docket No.

8, at 15). The Court will address each of the Plaintiff's arguments in turn.

### A.   Subjective Complaints of Pain Issue

Plaintiff argues that the ALJ erred in failing to accord great weight to Plaintiff's testimony concerning the intensity, persistence, and effects of his impairment on his ability to work.[7] (Docket No. 8, at 5). At the hearing held on March 27, 2007, Plaintiff testified that he suffered from the following: (1) arthritis in his back for which he was taking medication (R. at 281); (2) pain in his leg which he described as being similar to a "toothache" (R. at 282); (3) toe pain from gangrene which still "bothers" him sometimes and for which he walks with a cane (R. at 282); (4) burning in his feet "like if they're on fire." (R. at 284); (5) limited ability to bend at the waist (R. at 284); (6) some difficulty with memory (R. at 285); (7) difficulty walking up and down stairs (R. at 291); (8) numbness in the tip of the right middle finger (R. at 291); and (9) pain in the legs when sitting for more than an hour. (R. at 292).

Subjective complaints of pain need not be fully confirmed by the objective medical evidence to be afforded significant weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). While "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir. 1984). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount a claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-

---

[7]

Applicable law recognizes "a distinction between the issue of a medical condition and the issue of the existence of a statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). In the instant case, the ALJ recognized that Plaintiff had legitimate health problems, though the question was whether his condition was disabling.

76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp 648, 658 (W.D. Pa. 1998). Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeal's Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. *Williams v. Sullivan*, 970 F.2d 1178, 1184-85 (3d Cir. 1992), *cert. denied* 507 U.S. 924 (1993) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)).

In the instant case, the ALJ found the Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c):[8] Popliteal-tibeal and foot arch occlusive vascular disease, post-December 2005 left femoral-tibial bypass grafting, history of pre-gangrenous changes to the first, second, and third left toes and dry gangrenous changes to the left great toe, mild residual effects of a post November 2004 right middle finger crush injury and subsequent infection, history of nicotine addiction/abuse, history of hypertension which has been controlled, and "a single

---

[8]

A "severe" impairment is an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities constitute the abilities and aptitudes necessary to do most jobs, such as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 419.920(c).

moderate episode of a major depressive disorder." (R. at 18).

Plaintiff relies on *Green v. Schweiker* for the proposition that a claimant need only submit evidence of some condition which may cause the pain complained of, not evidence confirming the pain itself. 749 F.2d 1066, 1071 (3d Cir. 1984). However, *Green* also reinforces that standard that "subjective complaints of pain, without more, do not in themselves constitute disability." *Id.* at 1070. Plaintiff's reliance is misplaced as the ALJ clearly accorded weight to Plaintiff's complaints and considered them in rendering his decision. For example, after fully considering the record, the ALJ found that Plaintiff's impairments could be expected to produce the symptoms alleged (R. at 19). Moreover, in presenting the hypothetical questions to the VE, the ALJ accounted for many of the Plaintiff's symptoms. (R. at 293). The ALJ limited his hypothetical person to lifting a maximum of twenty pounds on occasion and ten pounds frequently, no climbing, crawling, or kneeling, and took into account the need to alternate between sitting and standing. (R. at 293). The ALJ did not discount such medical evidence, though he did find that the Plaintiff himself was not entirely credible and the evidence did not show that Plaintiff was precluded from all forms of work.[9] Therefore, the Court finds that the ALJ gave sufficient weight to Plaintiff's complaints of pain, though the complaints were balanced with the ALJ's credibility determinations and finding that Plaintiff's complaints are not equivalent to a statutory disability.

### B. Credibility Issue

Plaintiff argues that the ALJ failed to properly assess his credibility and thus the ALJ's credibility determination is not supported by substantial evidence. (Docket No. 8, at 8). Plaintiff also

---

[9]

*See* discussion of the ALJ's credibility determination on pages 14-18.

makes the following arguments which all challenge the ALJ's credibility determination: Plaintiff's receipt of unemployment benefits is not relevant to his credibility, the date Plaintiff filed for benefits is not probative of credibility, Plaintiff's work history does not undermine his credibility, and Plaintiff's smoking and occasional use of alcohol is irrelevant. (Docket No. 8, at 9-12). Since these arguments all go to the credibility issue, the Court will address them all here.

An ALJ's credibility determinations must be taken as conclusive when supported by "substantial evidence." *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). Further, a credibility determination made by the ALJ is entitled to great deference by the district court. *Refer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *Salles v. Commissioner of Social Sec.*, 229 Fed.Appx 140, 146 (3d Cir. 2007). Even limitations which are supported by medical evidence but also contradicted by other record evidence may or may not be found credible–the ALJ may choose to credit portions of the existing evidence. *Id*. (*quoting Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)). It is also clear that under the applicable regulations, a plaintiff's daily activities are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Still, the ALJ's credibility determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at *2 (1996); *See also Lang v. Barnhart*, No. Civ. A. 05-1497, 2006 WL 3858579, at *10 (W.D. Pa. Dec. 6, 2006). Where a claimant's testimony is reasonably supported by

medical evidence, the finder of fact may not discount the testimony without contrary medical evidence. *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir. 1992).

In the instant case, the ALJ found that though the Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, his statement concerning the intensity, persistence, and limiting effects of his impairment-related symptoms were not entirely credible. (R. at 19). For example, the ALJ noted that when Plaintiff applied for disability in December of 2005, he neither complained of depression nor listed any prior medical treatment for any mental illness or psychological disorder. (R. at 20). However, only after the denial of Plaintiff's application for disability benefits on May 24, 2006 did he begin seeking mental health services. (R. at 20).

The ALJ also noted that as of June, 2006, Plaintiff had shown significant use of addictive narcotic pain medications from at least February of 2005. (R. at 20). Due to Plaintiff's long-term use of pain medication, the ALJ concluded that it is reasonable to believe that one with such a dependency is less likely to report a decrease in symptoms which warranted the medication in the first place, even if the symptoms did in fact subside. (R. at 20). In addition, the ALJ concluded that the use of said pain medication, in conjunction with Plaintiff's use of alcohol and cigarettes do not seem compatible with a desire to improve health. (R. at 20). The record indicates numerous warnings of physicians to get Plaintiff to stop smoking. (R. at 199, 230).

Moreover, the Plaintiff testified that he could no longer hunt or fish. (R. at 23). Yet later, he admitted to having gone hunting twice and fishing three times during the alleged disability period. (R. at 23). Plaintiff testified that he is able to go to the grocery store, where he walks, and attend monthly meetings of the hunting and fishing club. (R. at 288, 289). The record also shows that as of May 9, 2006, Plaintiff was not engaged in physical therapy for any injury despite having attended in

the past. (R. at 114). As already mentioned, under 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), a plaintiff's daily activities are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the of the claimant's subjective complaints. The ALJ concluded that these activities evidence a significant degree of functionality, such that the Plaintiff can perform certain kinds of work. (R. at 23). Further, the ALJ concluded that Plaintiff's smoking and alcohol use showed that Plaintiff was not committed to getting well. (R. at 20). These findings based on Plaintiff's daily or regular activities are within the ALJ's discretion and bolster his credibility determination.

Next, the ALJ found that Plaintiff's historical employment record contains a number of unexplained gaps and that Plaintiff's receipt of unemployment benefits tends to undermine his desire to return to work. (R. at 20, 21). The ALJ found that Plaintiff committed to the disability process one-month after being laid off, indicating his inability to work, and then six-months later drew unemployment compensation,[10] which requires a willingness to work. (R. at 19). The ALJ is entitled to point out the inconsistency between the receipt of unemployment benefits and an application for disability as it adversely affects his credibility. *See Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir. 1991); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) ("the Commissioner's decision to deny Johnson disability benefits is bolstered by the fact that Johnson received unemployment compensation during the time she claimed to be disabled."). Further, the gaps in Plaintiff's employment history (i.e., 1983-1985, 1992-1993 and 1995-1996) in combination with the receipt of unemployment benefits led the ALJ to conclude that Plaintiff was committed to not returning to work. (R. at 21). The ALJ's citation of specific evidence in support of his finding bolsters his credibility determination and meets

---

[10] Plaintiff testified that his unemployment benefits ended on November 1, 2006; six-months after he began receiving them. (R. at 274).

the requirement of substantial evidence.

Plaintiff next argues that the ALJ's finding that the claimant's employment ended due to a lay-off, not due to any impairment-related inability is not probative of Plaintiff's credibility. While it is true that Plaintiff applied for disability benefits on December 28, 2005 after being diagnosed with and undergoing surgery for peripheral vascular occlusive disease, Dr. Manzetti never claimed that Plaintiff was permanently disabled.[11] In fact, the record reveals that shortly after the surgery, Dr. Manzetti found that Plaintiff's vital signs were stable, there were audible pulses in both feet, and there was no evidence of ischemic ulceration. (R. at 230). The ALJ acknowledged that Plaintiff has legitimate health problems but found it unlikely that a "compensable disability" arose on the same day that he was laid-off. (R. at 19, 20). In support of this finding the ALJ noted that until this point, Plaintiff had performed a job which included standing/walking for eight hours, climbing for four hours, crawling for one hour, carrying eighty pounds up ladders frequently, and supervising five other persons. (R. at 19, 20). Though the ALJ credited Plaintiff's testimony that he was laid off for being unable to do the work, he cited sufficient and specific evidence to justify his determination and make clear to Plaintiff the weight given to that testimony and the reasons for attributing such weight. (R. at 19). *See* SSR 96-7p (1996).

The ALJ's explanation of his credibility determination provides substantial analysis as to why he found Plaintiff not fully credible. After reviewing the ALJ's analysis, the Court finds that the ALJ did not err in his credibility determination as said determination is supported by substantial evidence.

---

[11] Moreover, the Court notes that the record reveals no statements by *any* of Plaintiff's treating physicians that he was permanently unable to work due to physical impairments.

### C.        Consideration of Dr. Mehta's Permanent Disability Opinion

Plaintiff argues that the check-box disability form filled out by Dr. Mehta should have been submitted into evidence and considered by the ALJ in rendering his decision because Dr. Mehta was a treating physician. (Docket No. 13, at 1). Plaintiff contends that because the ALJ agreed to keep the record open for Plaintiff to submit the disability form from Dr. Mehta, it should have been considered.[12] (Docket No. 8, at 13).

A treating physician's opinion is entitled to significant weight. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, the U.S. Court of Appeals for the Third Circuit has held that check-box form reports, such as the report at issue here, are weak evidence, with their reliability suspect where unaccompanied by "thorough written reports." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). A medical opinion is not entitled to controlling weight where it is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Though an ALJ may *not* reject pertinent or probative evidence without explanation, she may overlook evidence that is neither "pertinent, relevant, or probative." *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 204 (3d Cir. 2008).

In *Johnson*, Plaintiff, who sought judicial review of order affirming denial of disability benefits after being diagnosed with thoracic outlet syndrome of her right shoulder, argued that the ALJ overlooked the opinions of several of her treating physicians which supported a finding that she

---

[12]

The Court makes no finding of fact as to whether the form was actually ever received by the ALJ as such a finding would take the Court outside of its standard of review and the Court cannot re-weigh the record evidence. *See Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

was disabled. *Id.* at 199. Of particular relevance, Plaintiff argued that an ALJ cannot reject evidence without reason. *Id.* at 203. She asserted that it is the ALJ's duty to explain why evidence was accepted or rejected. *Id.* In addressing this argument, the Court found that the Plaintiff had selectively quoted from *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), ignoring the fact that Cotter stands for the proposition that all *pertinent* evidence must be credited. *Id.* The Court found that "[o]verwhelming evidence in the record discounted [the evidence in question's] probative value, rendering it irrelevant." *Id.* at 204. The failure to cite the evidence meant the ALJ implicitly rejected it. *Id.* at 205.

A district court may remand a determination of the ALJ when the claimant seeks to rely on evidence that was not before the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). In order to do so, however, the evidence must be new and material, and it must be demonstrated that there was good cause for why the evidence was not previously presented to the ALJ. *Id.* at 593. A failure to show good cause for why the evidence was not submitted to the ALJ earlier will result in the evidence not being considered. *Id.* at 596.

In the instant case, the record shows that the ALJ permitted Plaintiff to submit additional evidence at the March 27, 2007 hearing. (R. at 296-297). The ALJ stated that Plaintiff's counsel would have at least a week to submit the record of Dr. Mehta, but if nothing were received, the ALJ stated he would simply issue a written decision. (R. at 298, 299). Dr. Mehta checked the "permanently disabled" box indicating a primary diagnosis of "major depression moderate single." (R. at 265). The form indicated that the diagnosis was based on "clinical history." (R. at 265). The ALJ does not cite the opinion of Dr. Mehta in denying Plaintiff's disability application. (R. at 12-25). In addition, the Appeals Council made the form and a letter from Plaintiff's counsel dated June 8, 2007 part of the record on November 17, 2007. (R. at 10). Nonetheless, the Appeals Council denied Plaintiff's request

for review of the ALJ's decision.[13] (R. at 7).

Aside from a fax cover sheet, there is no evidence presented by Plaintiff to show the form was received by the ALJ before rendering his decision. (Docket No. 8-2, at 1). Moreover, Plaintiff makes no attempt to address why the evidence was not made part of the record before his hearing except to say that he may not have received it. (R. at 296-297). Even so, in line with Third Circuit precedent, the Court finds that the disability form on which Dr. Mehta opines that Plaintiff is "permanently disabled" is weak evidence and not supported by the rest of the record. *See Mason*, 994 F.2d at 1065. Moreover, there is no supporting documentation to substantiate Dr. Mehta's opinion. Essentially, the form constitutes a mere assertion of permanent disability. As weak evidence with suspect reliability due to a glaring lack of supporting documentation, the Court does not find Dr. Mehta's opinion to be probative of the ALJ's determination. *See Johnson*, 529 F.3d at 204. For example, the record shows that on March 21, 2007, Dr. Mehta noted the Plaintiff was "doing ok" despite the fact that he labeled the Plaintiff "permanently disabled" on January 31, 2007. (R. at 256). If Plaintiff were permanently disabled on January 31, 2007, surely Dr. Mehta would have reinforced the point at a subsequent appointment.[14] (R. at 22, 265).

---

[13]

20 C.F.R. § 404.970(b) sets out that if new and material evidence is submitted, the Appeals Council shall consider additional evidence only where it relates to the period prior to an ALJ's decision. 20 C.F.R. § 404.970(b). Moreover, the regulation sets out that the Appeals Council will review an ALJ's decision only if it finds the decision to be contrary to the weight of the evidence currently of record. *Id.* To this end, the Court finds instructive (and reiterates) the fact that the Appeals Council denied Plaintiff's request to review the ALJ's decision despite making Dr. Mehta's check-box form part of the record. (R. at 7, 10).

[14]

Moreover, the Court finds that Plaintiff lacks good cause for failing to submit the evidence to the ALJ earlier. Plaintiff's hearing on March 27, 2007 was nearly two months after Dr. Mehta

In summary, even if Dr. Mehta's form were part of the record, the ALJ would not have to address it or explain why it was rejected because substantial evidence supports the ALJ's findings. *See Johnson* at 204. Further, Dr. Mehta's opinion does not square entirely with the record and, under Third Circuit precedent, the form on which Dr. Mehta's opinion appears is weak evidence. *See Mason*, 994 F.2d at 1065. Moreover, the lack of written reports in support limits its probative value, leading the Court to conclude that ultimately, Plaintiff's disability determination would remain the same. *See Mason* at 1065; *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 833 (3d Cir. 1984)("the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the Secretary's determination."). Finally, Plaintiff made no showing of good cause for not submitting the evidence prior to his hearing. *See Matthews*, 239 F.3d at 592. As such, the ALJ did not err in not addressing the opinion of Dr. Mehta and this case need not be remanded for further consideration.

### D.     Did ALJ Accurately Portray Plaintiff's Limitations in his Hypothetical?

Plaintiff next argues that the hypothetical question posed to the VE did not accurately portray Plaintiff's impairments and therefore the testimony of the VE should not be considered. (Docket No. 8, at 15). Plaintiff contends that because the ALJ did not give sufficient weight to his complaints of pain, the hypothetical questions posed were defective. *Id.* Having already addressed Plaintiff's argument that his subjective complaints of pain were not given weight, the Court is faced with

---

filled out the form claiming Plaintiff was permanently disabled. In spite of the ALJ's accommodating gesture to leave the record open for the evidence to be submitted, Plaintiff fails to offer any reason let alone any good reason why the form could not have been made part of the record prior to the hearing. *See Matthews*, *supra*. Plaintiff had ample time. Because the Court finds no good cause for Plaintiff's failure to submit the evidence earlier, the question of whether the evidence is new or material need not be addressed here.

whether the limitations of the Plaintiff were accurately portrayed such that the VE's determination is credible.

Plaintiff cites to *Podedworny v. Harris,* 745 F.2d 210 (3d Cir. 1984) to support his contention that a VE's testimony may only be considered if the question posed by the ALJ accurately portrays the claimant's physical and mental impairments. *Id.* at 218. In *Podedworny*, the ALJ posed three hypothetical questions to the VE. *Id.* However, the ALJ focused his denial of disability benefits around the third question, which according to the hypothetical, presented a scenario in which the Appellant could again work in a variety of sedentary, semi-skilled jobs. *Id.* The ALJ's first and second hypothetical questions garnered a response from the VE that the Appellant could not engage in other work. *Id.* In finding that the ALJ's third question was defective, the Court said the question was "incomplete in that it failed to address two specific impairments:" dizziness and impaired vision. *Id.* Alternatively, had the question addressed those issues, it would not have been defective, and the Vocational Expert's response would have constituted substantial evidence. *Id.*

In this case, the ALJ took into account Plaintiff's physical and mental impairments in presenting his hypothetical to the VE. The ALJ limited this hypothetical person to twenty pounds lifting on an occasional basis and ten on a frequent basis; alternating between sitting and standing every ten minutes on every hour; no climbing, crawling, or kneeling; and no exposure to hazards such as machinery and heights. (R. at 294). Additionally, in addressing the mental impairments of the Plaintiff, the ALJ asked the VE to account for limitations due to depression or mental condition "that would limit a person to simple, unskilled, one or two-step type of work activity." (R. at 295). Accounting for the mental impairments, the VE determined that the same jobs would be available as if only the physical impairments were present. *Id.* Unlike *Podedworny*, the ALJ did not fail to

accurately portray any impairments brought to his attention by the Plaintiff and found in the record. Therefore, the Court finds that the hypothetical posed to the VE is not defective and the VE's testimony constitutes substantial evidence.

## VI.    CONCLUSION

Based upon the evidence of record, the parties' cross motions and briefs outlining their arguments, and the supporting documents filed in support and in opposition thereto, this Court concludes that substantial evidence supports the ALJ's findings that Plaintiff was not statutorily disabled as of November 20, 2005. The decision of the ALJ denying Plaintiff's application for disability benefits is affirmed. An appropriate order follows.

*s/ Nora Barry Fisher*
Nora Barry Fischer
United States District Judge

Date:   July 24, 2008

cc:     All counsel of record.